George Roberts, J.
The defendant is the owner of a television repair business. During the course of an investigation, the Department of Consumer Affairs, through an agent, had the defendant’s shop pick up a television set for repair on April 5, 1972. Prior to that date, the television set was tested by Department of Consumer Affairs experts and specially “ dusted ” so that any .repairs made would be easily identified by use of1 a black light fluorescent. After the set was returned by the defendant, together with a bill and statement of services rendered, the set was re-examined and it is alleged that certain repairs, purportedly made by defendant, were in fact not made. Some four months later, on August 8, 1972, a substantially similar transaction took place concerning the same television set but another agent. During the course of both these events, tape recordings were made between the defendant and the two Department of Consumer Affairs agents. Some three months later the defendant was arrested. After presentation to the Grand Jury, a prosecutor’s information was filed charging the defendant with two counts of petty larceny.
On August 21, 1972, 10 days after the alleged second repair and some three months prior to defendant’s arrest, the television set in question was stolen by persons unknown from a field office of the Department of Consumer Affairs. Sometime *1030 in June, 1973, the tape recordings disappeared from another Department of Consumer Affairs field office. Only partial transcripts of those recordings, relating solely to the first repair, are presently available and have been given to the defendant.
The Assistant District Attorney has set forth the circumstances of the loss of the television set and the tapes. The statement discloses that between the first ‘ ‘ repair ’ ’ and the second “ repair,” the set was used in seven other investigations not involving the defendant. After the testing on the second repair, the set was removed to a Department of Consumer Affairs field office, where it was kept under a desk. Shortly thereafter, the office was burglarized and the set stolen. The tapes were held in the files of another Department of Consumer Affairs field office. They were eventually sent out for transcription to an independent reporting service, where they were held for two months and then returned, untranscribed. Sometime between the time of the return of the tapes and June, 1973, the tapes disappeared.
The case is now before me for trial, and the defendant makes the following motions:
(1) to preclude all testimony by the People’s witnesses in regard to conversations which were recorded on the lost tapes;
(2) to preclude all testimony by the People’s witnesses in regard to the physical inspection and condition of the stolen television set;
(3) a dismissal of the information on the ground that the loss of the television set and tapes deprives the defendant of his right to cross-examine witnesses and to prepare a meaningful defense.
The responsibility to safeguard and preserve evidence gathered against an accused lies with the prosecution. Since it has initiated the criminal proceeding it has a heavy burden to protect the evidence in its, or its agent’s possession. When evidence is gathered for purposes of a criminal proceeding, the prosecution must be considered to be impressed with the highest duty of care and preservation toward it. (See United States v. Bryant, 439 F. 2d 642, 651-652.)
In United States v. Augenblick (393 U. S. 348) the Supreme Court held that where evidence properly the subject of discovery is lost, the government bears the burden of explaining the circumstances of the loss. In determining whether the loss there would be excused, the court referred to the “ routine in handling and using ” the evidence (at p. 355). In United States *1031 v. Bryant {supra) the court stated: “we hold that sanctions for nondisclosure based on loss of evidence will be invoked * * # unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence gathered in the course of a criminal investigation ” (at p. 652).
This court is greatly concerned that, following the initial transaction with the defendant, this same television set was used in some seven other unrelated investigations. Since it is reasonable to assume that further repairs and/or adjustments were made during those investigations, even if the television set were presently available, one can only speculate as to what condition it would be in, or even the ultimate admissibility on trial against the defendant. Certainly, the chain of possession of the evidence has been broken. While the District Attorney argues that he will proceed using photographs and diagrams of the television set in its before- and after-condition, with respect to the initial transaction, such materials are not a proper substitute for the television set itself. The court has not been informed as to whether or not the television set was used in independent investigations after the second transaction but it is admitted that no photographs or diagrams were made with respect to this transaction. Such investigatory techniques were short-sighted and lacked professionalism.
The television set and the tapes were lost while in the exclusive control and custody of the Department of Consumer Affairs, not the District Attorney. However, since the Department of Consumer Affairs was charged with the responsibility of conducting the investigation, they must be deemed to be agents of t]ie prosecution. Moreover, there is evidence that at the time of the second transaction with the defendant, the District Attorney’s office was an active participant in co-ordinating the investigation. The conduct of the Department of Consumer Affairs herein must be imputed to the District Attorney (cf. Barbee v. Warden, 331 F. 2d 842).
This court concludes that the procedures used in preserving and protecting the television set and the tapes were, at best, haphazard and careless and, at worst, grossly negligent. While the court vigorously endorses the aims of the Department of Consumer Affairs in weeding out consumer frauds, when the enforcement of a consumer complaint enters the sphere of a criminal prosecution, the standard of care and custody required in the preservation of evidence is as high and exacting as in *1032 that of any other criminal prosecution. The procedures employed here did not meet such standards and were so blatantly careless as to effectively invite theft or loss. Accordingly, I find that the loss of the television set and tapes here was a direct result of the prosecution’s failure to safeguard evidence.
If available, the tapes and the television set involved here would have been subject to discovery by the defendant (GPL 240.20, subd. 1, par. [b]; People v. Zacchi, 69 Misc 2d 785). Furthermore, if the tapes were available, the defendant would be entitled to their use on trial, under the doctrine of People v. Rosario (9 N Y 2d 286). The television set would have been crucial evidence upon trial. The District Attorney’s office has stated that it has expert witnesses who would testify as to the television set’s condition before and after the transactions which gave rise to both counts of the information. The defendant has stated he contemplates the use of experts of his own. Since it is obvious that such expert testimony would revolve upon technical opinions based as to work done or not done on the television set, the defendant is greatly disadvantaged by the unavailability of the real basis of such opinion evidence — the television set itself. He is thus put in an inferior position in presenting his defense, through no fault of his own. The cumulative effect of the poor investigation and the ultimate loss of the evidence can only result in an irreparable denial of this defendant’s right to adequately prepare for and maintain his own defense.
A criminal prosecution should not be permitted :to proceed under such circumstances. Accordingly, the court, in the exercise of its discretion, finds, pursuant to GPL 170.40, that a dismissal in the interest of justice is required.
In view of the court’s dismissal of the information, it is not necessary to determine the defendant’s motions to preclude the testimony of the prosecution’s witnesses in respect to the lost items.